Issue, please call the next case. 212-424 Sunrise Assisted Living v. Heather Benich Counsel, you may proceed. Good morning. May it please the Court, Counsel. Good morning. This is an interesting case in that it contains a lot of material that could be considered missing. From the record. Specifically, if you look at the order of the commission, and the factual findings, the factual findings are approximately 19 sentences long. Which is pretty glaring considering the record that's before you, and the amount of treatment that the petitioner had. What's also missing is important factual findings as it relates to the petitioner's pre-existing conditions. Specifically, the commission found that the petitioner and her condition was related to her work activities. What they did is they rejected the only opinion evidence in this case in doing so, that being of Dr. Kornblatt. In reviewing the record, there really is no opinion evidence offered by the petitioner or the injured employee in this case. The decision of the commission recites that Dr. Kornblatt's opinions contradict those of the treating physicians. Which, frankly, makes no sense. The treating physicians in this case all diagnosed the petitioner with a lumbar strain immediately after the accident. The same thing that Dr. Kornblatt did. Well, the history of the treatment, she gives a consistent history of how she was injured. Correct. And the history of the treatment through the various doctors goes from, they talk about a strain to a radicular component to an MRI that shows a bulging disc. I mean, it all makes sense in terms of a sequence of events, doesn't it? Correct. But if you look at the treating physicians, and specifically two orthopedic surgeons, Dr. Fetter and Dr. Zolich, Dr. Zolich's letterhead saying that he specializes in the spine, they look at those MRI findings and they still diagnose a lumbar strain. Nowhere is that addressed by the commission. Rather, the commission just leans over and gives very basic and rudimentary components of fact in this case. What about the argument that even assuming there were some quote-unquote back issues before the alleged accident, if the accident exacerbated or accelerated a pre-existing condition, is that compensable? Well, it could be, but I think that you need evidence to prove that. And I think that there's no evidence in the record on the part of the injured employee in this case stating that her condition was aggravated by an underlying degenerative condition. In fact, the petitioner gave a history at the time of her hearing that she had no pre-existing conditions. The respondent employer in this case introduced evidence that she had pre-existing low back pain dating to 1999. And I think we need to spell out exactly what that was, because what you introduced was her primary care physician's records. Correct. Including every time she had a cold or whatever. Correct. Going back to when she was about 18 and pointed out that she had asked several times about breast reduction surgery because of back problems. Correct. And that her mother and her grandmother had had the same problems. But there's nothing in those records about where that back problem was, what it was like. Isn't that true? I think that's correct. And Respondent's Counsel never asked her about it. That is correct. Had the records there ready to introduce, but never gave her an opportunity to explain, right? Well, that's correct. But respectively, Your Honor, I think that the burdens on the petitioner in the case to prove, and I think that the case law says that once a pre-existing condition is introduced, that you cannot just go forward with a chain of events theory. What evidence was there of a pre-existing condition? She went to the doctor and said, my back bothers me sometimes. Exactly. Because of I have large breasts. My mom and my grandma had the same problem. And ultimately that's what she had surgery for was some low back problems. I mean... I don't think the records even say low back when she talked to her primary care physician, do they? I think that whenever you reference the back, I would presume that you would be... You would presume it's low back? Correct. Okay. I think that there were maybe specific references also in those family records to neck pain as well. I think it said neck and back. I think it said both. But I think that that's sort of the point. Also... But you didn't introduce any evidence to specify at all what those records referred to. Correct. You didn't have the doctor come in and testify about it. No. Your IME didn't say that there was any pre-existing condition, back problem. Correct. Right. I don't even know if there's reference to Dr. Kornblatt reviewing those medical records. Right. You just threw these primary care doctor's records in at the end. Correct. Right. I think that they were probably discovered after the IMEs from Dr. Kornblatt at a later date. I don't know that... They were there at arbitration hearing, though, when she testified the claim.  Okay. Don't the records of Dr. Zalich, Fetter, and Sitow connect the claimant's back problems to the March 2007 accident? Don't they support that? I think that they support that a back strain occurred. Okay. I mean, I guess that gets to the heart of the problem. Why did the petitioner have surgery? She had surgery with Dr. Sitow at a later date for unknown reasons other than to say some bindings on the MRI scans. Dr. Sitow never says he performed surgery secondary to a work injury. Well, here's his September 21, 2007 report that I have here. He says in that report, as you know, she's a 32-year-old white female, CRNA, injured at work on March 6, 2007, lifting a heavy patient. So he says she was injured at work. In the same report, he says there's an MRI that shows disc herniations. Then he goes on to say she needs surgery. Correct. I don't think... I mean, he doesn't say the magic words. I have an opinion within a reasonable degree of medical certainty that this disc herniation was caused by that injury at work. But he, to say that he never says, he never connects it, it's kind of... Well, I mean, that's a history taken by the petitioner, correct? I mean, I think that that history of injury is one given by the petitioner. And then he goes on to say what he reads the MRI films to show and then to say that he recommends surgery. But in nowhere does he say that he relates the surgery to work. I mean, frankly, there was no evidence or opinions. And there was no evidence of anything else that happened, though, either, was there, that could have caused these herniations? Well, I think Dr. Kornblatt said that it could have been. Now, it could have been. Dr. Kornblatt said it was a degenerative condition. He put her at MMI shortly after the accident with the lumbar sprain, the same that all the other treating doctors did. If you look at the totality of the evidence in this case, you're looking at a whole bunch of treating physicians who diagnosed the petitioner with a lumbar sprain. And interestingly, the decision of the commission is very succinct and does not really provide any large factual support to back up the opinion, other than to say that there's a rejection of the Respondent's expert witness in this case. And then the reason that they use is contradicted by the very evidence that's put into the record. I don't think that the commission can just arbitrarily reject the only opinion evidence that's offered in a case. I think that there has to be some reason given as to reject that evidence. Well, the evidence does show, does it not, a sequence of events in that she was working before this incident? Correct. She was able to perform her duties. This incident occurred after the incident. She sought treatment, gave a consistent history of what happened. Her back situation did deteriorate. I mean, temporally, the timing of it is she was working, doing fine before this happened. And then she ends up with surgery recommended over a consistent series of medical treatment. She undoubtedly had surgery eventually performed. But I think the gist of the point is, is that whenever you're looking at the commission's findings, you see that you have Dr. Zolich and Dr. Fetter, who quite frankly is her doctor, her own orthopedic surgeon who looks at her lumbar studies and says this is a back strain. And then Dr. Sitow doesn't come along until essentially the petitioner probably doesn't like what she hears from the other doctors and goes to this other surgeon six and a half months after the fact, who then performs surgery. I think that that's a pretty big leap to offer a surgical or to award a surgical to surgery, should I say, by the commission and over $300,000 in medical bills without somehow tying those up. I think that there has to be some sort of evidence shown in the record by the petitioner saying this surgery is causally related to the back condition from work. I mean, I specifically am not able to go in and look at these imaging studies, and I think it's all up to the doctors. And if you look at Dr. Fetter and Dr. Zolich, they're both orthopedic surgeons. They look at the films right after the fact and they say back strain. It's right on what Dr. Kornblatt says, but then the commission arbitrarily says Dr. Kornblatt's wrong, and he has no basis for opinions, essentially. His opinions, because they contradict the treating surgeons, that's not correct. And I think that when the commission puts that in the decision, that's pretty indicative that it's not a proper ruling on the part of the commission. It's against the manifest way of the evidence, frankly. Dr. Kornblatt's opinions actually mirror that of the treating physicians, if you look at the evidence. And I think that gets back to the crux of the argument, that there was really no opinion evidence offered in this case by the petitioner other than to put in some medical records. And by and large, if you look at it, the factual findings by the commission are so short, they're in essence the same duration that the listing of medical bills are in the same decision. It's a two-page decision with a good bulk of it being made up of the arbitrator's decision awarding temporary total disability, permanency, and medical bills take up a bulk of the decision. Which the commission findings, as I indicated, are just generic in that sense where they don't even identify what the condition is in the petitioner's body. They just said she has a condition of ill being in the lumbar spine. And they don't reconcile at any point what the different diagnoses are by the doctors and how initially all the medical doctors diagnosed the petitioner with a lumbar strain and a return to work. And if you look at it, Dr. Fetter is trying to get the petitioner back to work. Dr. Zolich is trying to get the petitioner back to work. And Dr. Kornblatt agrees the petitioner should go back to work. And then almost seven months later, Dr. Sitow comes in and takes the petitioner completely off work. I don't know how that is reconciled by the commission. And their factual finding is written down in 19 sentences. I think that in doing so that they're improperly characterizing the opinions of both Dr. Kornblatt as well as the treating physicians. And in that sense, I think that the medical review and factual findings by the commission are very succinct and don't really offer any guidance with regards to the opinions that were placed in front of them at the time of the hearing. I think that the family doctor records do show evidence of preexisting problems with low back pain that cannot be ignored by the commission. And specifically, if you look, I pointed out in the brief that there was a family doctor record shortly after the work accident. I don't even think she mentions the work accident. She goes back in there and says the same thing that she's been saying all along. I have low back problems, and I think that I need to have some sort of surgery to correct it that has nothing to do with the work injury. I think once you do that, the case law says that the chain of events that the petitioner has gone on in this case is out the door. And that that rebuttable presumption of the petitioner introducing this evidence of the chain of events is gone. And I think that maybe some opinion evidence should have been entered. The next point I want to bring up is that the medical bills were introduced, and they were never really laid any foundation for, I think, under the fee schedule. Did you object to the introduction of the medical bills? Yes, they were objected to at the time of trial. Okay. Here's the, this is page 149 in the record. This is Mr. DeBlank. Andrew DeBlank. Which is not you, right? Correct. When they introduced medical bills, respondent objects to liability, including reasonableness and necessity as well as causation, Your Honor. And your arbitrator says, but not to the admission, correct? And Mr. DeBlank, no. Correct. Just to causation. So there was no objection to the admission of the bills, is that right? Correct. And I'm not stating that the bills are not. Actually, I think under the fee schedule, probably the reasonable aspect prong of medical bills may be out the window now. I think the question is, are they medically necessary? So really, causation. Yeah. I mean, can you throw over $300,000 medical bills into the record and expect them to be paid without any evidence to support that? I don't think you can. I mean, there's nothing in the record to support that those medical bills are necessary secondary to award action. In short, the manifest way to the record shows the petitioner suffered a lumbar sprain with a preexisting condition. And as such, the petitioner failed to show a chain of events, given that she had preexisting conditions. Thank you. Thank you, counsel. Counsel, you may respond. Good morning, Justice. This is Effie James from Bonne Ruffalo Marzal on behalf of Heather Bannock. And I want to touch a little bit on this preexisting condition counsel keeps alluding to. And I think Your Honor alluded to in your questions to him, there is no evidence of any preexisting condition here. All we have are some complaints dating back to 1999, well before this injury, that she had some back pain. Well, I could have had back pain two months ago. It doesn't mean I have a preexisting condition. So I think for him to stand before Your Honors and say that I think is a little bit disingenuous. And again, nothing in those records to say it was low back. There is no evidence of any treatment. Heather wasn't asked about any prior treatment. She was asked, excuse me, whether she had any prior back conditions, and she said no. And the reason she said no is because there was no prior treatment, no prior injections, no prior therapy, no prior surgery, no prior diagnosis of any preexisting back condition. I think counsel makes his argument with regards to causation, and he states to you that there is no medical evidence. Well, Dr. Zolich says on March 22, 2007, that the patient suffered a lumbar strain at work. He did acknowledge the MRI findings of a small disc protrusion at L4, L5, and L5, S1. Dr. Sittow said when he examined the patient that she was a 32-year-old CNA injured at work on March 6, 2007. Her therapist, Dr. Ecole at North Suburban Medical, in notes from March to August when she was in therapy, stated that she suffered an occupational injury. Dr. Poliak at Condell Medical Center opined in a note from 2009 that she suffered from chronic back pain since she was a baby. Dr. Zolich mentions her injury at work in 2007. And even Dr. Kornblatt can't say that she wasn't injured at work, because that's not even an issue here. He says that she had a work-related injury on March 6, 2007. So then we go now to what was the diagnosis, okay? And there a lot is being made with regards to this lumbar strain that she was diagnosed with. Now, counsel in his brief cites Dr. Estrella indicating a diagnosis of a low back strain, but doesn't tell you that that diagnosis was made prior to the MRI findings of the disc protrusions. He cites Dr. Zolich and Dr. Fetter. Both, however, in both of their reports, agree with the MRI findings. They're not disputing those findings, and they refer to those findings in their report. Counsel, is it fair to say that, I mean, there's conflicting medical evidence here, isn't there? I'm sorry? There's conflicting medical evidence here, isn't there? Well, the conflicting medical evidence comes from Dr. Kornblatt, and I want to get into a little bit. Well, I don't know how far you want to get into it. The point that I'm trying to make is if there's conflicting medical evidence, that's within the province of the commission to decide the weight and the credibility of that evidence, correct? Absolutely. And I think the arbitrator, the commission, the circuit court all took a look at this record. And let me get a little bit into what Dr. Kornblatt did, because I think it's very important. I think when counsel makes an argument that he provides the only causation opinion with regards to whether the surgery was necessary, you know, what causation opinion do we have here? He says it wasn't necessary, but what do we have? We have one visit to Dr. Kornblatt where he actually saw Heather Banik and examined her. Three other reports were all record review reports. Okay, so there was only one examination here. The first examination on May 21, 2007, he indicates a work-related injury, diagnoses her with a lumbar strain, but admits that he did not have and could not review the MRI films himself. So he has, as far as I'm concerned, an incomplete record to review in making his decision. On November 1, 2007, he had records to review again. Again, admitted he did not have the MRI or X-ray films, but wants to mislead everybody involved to say that the MRI report itself says that the petitioner had a preexisting medical condition. That's a lie. There's nowhere in that MRI report that says the word preexisting anywhere. It indicates the L4, L5 small central disc protrusion, budding origins at L5 nerve root, L5 S1 small central disc protrusion associated with a small annular tear. There is nothing in that finding that says she had a preexisting anything. Those are words coming out of Dr. Kornblatt's mouth. But again, didn't have the films to review on that second report. Now, his third report, May 22, 2008, he finally gets the MRI of April, 2007, showing exactly what I just stated. Remember, this is May 22, 2008. Doesn't review another MRI that occurred in April of 2008, about five weeks prior, that shows her condition had worsened, it went from the small disc protrusions that had developed to the small central disc protrusion. And it was broad-based central disc herniations. So again, third report, incomplete information. He comments on the need for surgery and says, no, she doesn't need surgery. But again, doesn't have the report indicating the broad-based disc herniations. And then in his final report from July 3, 2008, again a records review report, and says, oh, now I finally have both and I don't see a difference between the two. Well, obviously there's a difference between the two. Dr. Sittow found the need to write a report himself indicating that he strongly disagreed with Dr. Kornblatt and that he had seen Dr. Kornblatt do the same surgery with same presentations on other patients and questioned his motives. And I think that's what this Court should do. And that's what the Court did, is question Dr. Kornblatt's motives. We have four reports, all incomplete information, and I think it makes all of his opinions suspect. So what do we have? Again, we're left with a chain of events here. We have a petitioner who was working her full-duty work, no restrictions, doing her job. She gets hurt at work on March 6, 2007, not in dispute. She gets hurt at work. She has chiropractic treatment. Pain medications are given to her. She has physical therapy. She has epidural steroid injections. And then finally, a recommendation for surgery once her condition has worsened, as evidenced by two MRIs one year apart. And I think, again, that chain of events that Your Honors alluded to is clear from the record that there is a causal connection here between her date of accident and her subsequent surgery. In light of all that, you know, I don't believe that counsel has met its burden. I think this Commission decision should stand and should not be reversed, because it is in the purview of the Commission to decide conflicting medical evidence. And for that, I ask that you affirm the decision. Thank you, Your Honors. Thank you, counsel. Counsel, you may reply. Thank you, Your Honor. Just briefly, counsel mentioned that there are these two MRIs showing a progression of the disease. And that's the need for surgery. And I think that's the gist of what I'm getting at. How can we reconcile that whenever we don't have those opinions and evidence? How did the Commission come to its conclusion without having those opinions and evidence? I think the Commission made a big leap here. I think they made a huge leap in that they reviewed the medical records and made their own medical opinions. I don't think the Commission can necessarily do that. I think if you go on a chain of events that you can't have such complicated medical findings such as this with multiple MRI studies and everything else, in essence, counsel is asking that the Commission can make these determinations without opinions in the record. And frankly, the opinions that are in the record are only that of Dr. Kornblatt, save the records of the treating physicians right after the fact who diagnosed her with a lumbar strain. And I think that they all give a clear mechanism of injury and look at the film and say, this lady had a lumbar strain. And that's absolutely in harmony with Dr. Kornblatt and contrary to the surgery that was performed by Dr. Sitow over a year after the injury. Thank you.